1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE,<br><br>Plaintiff,<br><br>v.<br><br>HATMAKER LAW CORPORATION et al,<br><br>Defendants. | Case No.   1:20-cv-01106-NONE-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE BE DENIED<br><br>(ECF No. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS |

On December 23, 2020, Defendants Anand Hospitality LLA, Hatmaker Law Corporation, and Javantilal M. Patel ("Defendants"), filed a motion to dismiss Plaintiff Theresa Brooke's ("Plaintiff") complaint. (ECF No. 12). On October 20, 2021, this motion was referred to the undersigned for findings and recommendations. (ECF No. 15). For the reasons given below, the Court will recommend that Defendants' motion to dismiss be denied.

## I.     BACKGROUND

### a.  Plaintiff's Complaint

Plaintiff filed her complaint on August 10, 2020.  (ECF No. 1).  Plaintiff claims that she is a serial "tester" of the Americans With Disabilities Act ("ADA").  She has filed approximately 1,000 ADA lawsuits against hotels across the western United States.  Plaintiff has been insulted and threatened for her litigation positions.  Although many ADA defendants have attempted to have Plaintiff declared a vexatious litigation, these attempts have been unsuccessful.  Plaintiff

states that she "is bringing this lawsuit as a stand against the lawyers and ADA defendants who are empowered to threaten and intimate Plaintiff.  She is fed up."  (ECF No. 1, at p. 4).

Previously, Plaintiff filed an ADA lawsuit against Defendants in *Brooke v. Jav. Patel*, E.D. Cal. Case no. 1:20-cv-00101-NONE-SKO (the "Underlying Litigation").  Plaintiff alleges that Defendant Hatmaker Law Group threatened Plaintiff's counsel with a State Bar complaint on three different occasions during a settlement discussion.   Defendant Hatmaker Law Group also threatened a counterclaim without any basis, also during the course and scope of a settlement discussion of the Underlying Litigation.  Defendant Hatmaker Law Group has also taken unfounded legal positions in the Underlying Litigation.  All of Defendants' motions have been denied, and all of Plaintiff's motions have been granted in the Underlying Litigation.

On or around July 30, 2020, Plaintiff, through her agent, sent Defendant Hatmaker Law Group a settlement offer.  During the settlement discussion via e-mail, Defendant Hatmaker Law Group, through one of its principals, Rachelle Golden, threatened Plaintiff through her agent. First, Ms. Golden threatened to file a cross claim, which Plaintiff contends was actually a counterclaim.  Ms. Golden refused to provide the basis for this potential claim, and Plaintiff contends there is no such legal basis.  During the course of the same settlement discussion, Ms. Golden threatened Plaintiff's agent on three occasions with a State Bar complaint because Plaintiff's agent was allegedly "insulting my intelligence."

It is a violation of Rule 3.10 of the California Rules of Professional Responsibility to make a threat of bringing disciplinary charges in order to gain an advantage during an ongoing claim.

During the same settlement discussions, Ms. Golden referenced an actual State Bar complaint against Plaintiff's counsel brought by someone unknown to Ms. Golden.  Plaintiff alleges that such a complaint is not in the public record.

Plaintiff has suffered extreme emotional distress, anxiety, depression, and other symptoms as a result of Ms. Golden's threats.

Plaintiff brings one cause of action for a violation of Title III of the ADA.  It relies on 28 C.F.R. 36.206(b), which states "No private or public entity shall coerce, intimidate, threaten, or

1    interfere with any individual in the exercise or enjoyment of, or on account of his or her having

2    exercised or enjoyed, or on account of his or her having aided or encouraged any other individual

3    in the exercise or enjoyment of, any right granted or protected by the Act or this part."

4    **b. Defendants' Motion to Dismiss**

5    Defendants filed their motion to dismiss on December 23, 2020. (EC No. 9).  Defendants

6    argue that the communications that serve as the basis for Plaintiff's complaint are privileged

7    communications under the *Noerr-Pennington* Doctrine because they were made in the context of

8    settlement communications.[1]

9    Defendants also filed a request for judicial notice totaling 87 pages, requesting without

10   argument that the Court judicially notice four documents related to the Underlying Litigation.

11   Defendants also filed a declaration of Rachelle Taylor Golden in support of Defendants' motion

12   to dismiss, totaling 49 pages.

13   Plaintiff filed her opposition on January 1, 2021.  (ECF No. 11).  Plaintiff argues that the

14   *Noerr-Pennington* Doctrine does not apply because Defendants are not petitioners of government

15   branches.  Plaintiff claims that the doctrine only applies to a portion of antitrust litigation.

16   Plaintiff asks for Rule 11 sanctions against Defendants for filing the motion.

17   Defendants filed a reply in support of their motion to dismiss on January 15, 2021.  (ECF

18   No. 12).  Defendants further explained why the *Noerr-Pennington* doctrine should apply to this

19   case.

20   On October 20, 2021, the District Judge referred this motion to the undersigned for the

21   preparation of findings and recommendations.  (ECF No. 15).

22   **II.    APPLICABLE LAW**

23   The Ninth Circuit has explained the *Noerr-Pennington* doctrine as follows:

24   The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of
     "the right of the people ... to petition the Government for a redress of grievances."
25   U.S. Const. amend. I. Under the *Noerr–Pennington* doctrine, those who petition

26

27   ─────────────────
     [1] Defendants' motion also includes a lengthy chronology of events related to the communications
28   at issue in the complaint, and dispute Plaintiff's allegations.  Because that factual recitation is not
     relevant to the legal issue in the motion to dismiss, the Court will not summarize it here.

1
2
3

any department of the government for redress are generally immune from statutory liability for their petitioning conduct. *Empress LLC v. City & County of S.F.,* 419 F.3d 1052, 1056 (9th Cir.2005) (citing *Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1092 (9th Cir.2000)).

4
5
6
7
8
9
10
11
12

The *Noerr–Pennington* doctrine arose in the antitrust context and initially reflected the Supreme Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause. In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), trucking companies brought suit against railroad companies alleging that efforts by the railroads to influence legislation regulating trucking violated the Sherman Act. *Id.* at 129, 81 S.Ct. 523. The Court held that "the Sherman Act does not prohibit ... persons from associating ... in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Id.* at 136–37, 81 S.Ct. 523. In reaching this conclusion, the Court observed that construing the Sherman Act to reach such conduct "would raise important constitutional questions" respecting the right of petition, stating "we cannot ... lightly impute to Congress an intent to invade ... freedoms" protected by the Bill of Rights. *Id.* at 138, 81 S.Ct. 523.

13
14
15
16
17
18
19

*United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), extended this antitrust immunity to those engaging in lobbying activities directed toward executive branch officials, regardless of any anticompetitive intent or purpose. Subsequently, in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the Court, recognizing that "the right to petition extends to all departments of the government" and that "[t]he right of access to the courts is ... but one aspect of the right of petition," extended *Noerr–Pennington* immunity to the use of "the channels and procedures of state and federal ... *courts* to advocate [groups'] causes and points of view respecting resolution of their business and economic interests *vis-á-vis* their competitors." *Id.* at 510–11, 92 S.Ct. 609 (emphasis added).

20
21
22
23
24
25
26
27
28

Recognizing the constitutional foundation of the doctrine, the Supreme Court has applied *Noerr–Pennington* principles outside the antitrust field. In *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Supreme Court held that the Petition Clause protects access to judicial processes in the labor relations context, and that the labor laws must be interpreted, where possible, to avoid burdening such access. *See id.* at 741–44, 103 S.Ct. 2161. In *Bill Johnson's,* a restauranteurs filed a civil suit seeking to enjoin employees from picketing his restaurant as part of a unionization campaign. In response, the employees filed an unfair labor practice charge with the National Labor Relations Board, alleging that the civil suit was retaliatory and violated section 8(a) of the of National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (4). *See Bill Johnson's,* 461 U.S. at 734–35, 103 S.Ct. 2161. The Court, citing *California Motor Transport,* held that, in light of the protection afforded to the right of access to the courts by the Petition Clause, a construction of the NLRA permitting the Board to enjoin a well-founded but retaliatory lawsuit was untenable. *Id.* at 743, 103 S.Ct. 2161.

4

1  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–31 (9th Cir. 2006).  The doctrine also applies to

2  actions incidental to "a valid effort to influence governmental action." *Id.* at 934.

3  **III.    ANALYSIS**

4  Defendants ask that this Court dismiss the lawsuit on the basis that any communications

5  made in the context of settlement are privileged and not subject to liability under the ADA due to

6  the *Noerr-Pennington* doctrine.

7  As an initial matter, the settlement communications do not fit within the core of *Noerr-*

8  *Pennington*.  The settlement communications were not made as part of a petitioning a department

9  of the government.  The claim at issue was not antitrust activity.  Instead, this was a

10  communication from one party in a lawsuit to another in the context of an ADA litigation.

11  In support of its argument that the doctrine should extend to such a communication,

12  Defendants cite the Ninth Circuit case of *Columbia Pictures Industries, Inc. v. Professional Real*

13  *Estate Investors, Inc.*, 944 F.2d 1525, (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993), which affirmed a

14  trial court's grant of summary judgment dismissing federal antitrust counterclaims based on the

15  *Noerr-Pennington* doctrine.  Defendants rely on the following statement in that case:

16
17  > A decision to accept or reject an offer of settlement is conduct incidental to the
   > prosecution of the suit and not a separate and distinct activity which might form
   > the basis for antitrust liability. Consequently, PRE's ability to establish that
18 > the Movie Studios' refusal to deal violated the Sherman Act depends on its success
   > or failure in showing that the copyright infringement action is actionable under the
19 > federal antitrust laws.

20  *Id.* at 1528–1529.  While it is true that the Court held that the settlement communications in that

21  case were subject to *Noerr Pennington*, the Court did not hold that all settlement communications

22  are therefore privileged under the doctrine.  In the *Columbia Pictures* case, the claim at issue was

23  antitrust and the underlying conduct was co-plaintiff movie studios' communications with each

24  other, including during settlement communications.  The Ninth Circuit thus held, in the portion

25  cited above, that because the movie studios' litigation conduct was subject to immunity from

26  antitrust claims under *Noerr-Pennington*, so too were the settlement communications incidental to

27  that lawsuit.  *Columbia Pictures* is distinguishable because the underlying claim here is not

28

antitrust, it is ADA, and the litigation that led to the settlement conference, also an ADA claim, is not itself subject to *Noerr Pennington*.

Defendants next cite *Freeman v. Lasky, Haas & Cohler,* 410 F.3d 1180 (9th Cir. 2005), which upheld dismissal of an antitrust action against executives, lawyers, and law firms of state real estate sale associates involved in previous antitrust litigation based on alleged discovery misconduct.  The Court explained:

> Because the *Noerr–Pennington* doctrine grows out of the Petition Clause, its reach extends only so far as necessary to steer the Sherman Act clear of violating the First Amendment. Immunity thus applies only to what may fairly be described as *petitions,* not to litigation conduct generally. A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept. But discovery is merely communication between parties as an aid to litigation. It is not in any sense a communication to the court and is therefore not a petition. *See Theofel v. Farey–Jones,* 359 F.3d 1066, 1078–79 (9th Cir.2004) (noting that "[s]ubpoenaing private parties in ... private ... litigation" is hardly petitioning). Nevertheless, "conduct incidental to" a petition is protected by *Noerr–Pennington* if the petition itself is protected. *Id.* at 1078 (internal quotation mark omitted); *cf. Noerr,* 365 U.S. at 143–44, 81 S.Ct. 523.

*Id.* at 1184.  Again, the issue before the Court in that case was whether discovery conduct was sufficiently incidental to petitioning the government to shield the parties from antitrust liability.  The court did not hold that settlement communications are privileged from all lawsuits generally.

Defendants do not cite any case, nor does the Court know of any, that holds that any communications made in the context of any settlement discussions are subject to immunity under the *Noerr Pennington* doctrine.

After review of the case law and the associations doctrine, the Court finds that the *Noerr Pennington* doctrine does not apply here.  The Underlying Litigation did not involve Defendants petitioning the government.  Rather, Defendants were themselves defending a claim.  The claim at issue here is not antitrust or any cause of action akin to antitrust—it is ADA.  Defendants' communications as part of settlement discussion were not incidental to them petitioning the government.  Plaintiff's claims do not infringe on Defendants' First Amendment "right of the

people ... to petition the Government for a redress of grievances."  U.S. Const. amend. I.

The Court thus recommends that Defendants' motion to dismiss be denied.

## IV.     REQUEST FOR JUDICIAL NOTICE

Defendants' opposition includes a request that the Court take judicial notice of the original complaint in the Underlying Litigation, the filing confirmation of Defendants' motion to dismiss in the Underlying Litigation, Plaintiff's First Amended Complaint in the Underlying Litigation, and Defendants' motion to dismiss Plaintiff's First Amended Complaint in the Underlying Litigation, totaling 87 pages. (ECF No. 9-2).

The request for judicial notice does not contain any explanation for Defendants' request for judicial notice.  To the extent Defendants referred to these documents in the background discussion of the motion to dismiss and wish to attach them for the Court's reference, the Court need not take judicial notice of them.  Defendants' motion and the Court's recommendation on that motion concern the allegations in Plaintiff's complaint and do not depend on the information in the attachments.  The Court thus recommends denying Defendants' request for judicial notice.

## V.     PLAINTIFF'S REQUEST FOR SANCTIONS

In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff requests Rule 11 sanctions against Defendants.  Plaintiff argues that the motion to dismiss is a continuation of the baseless claims made in the Underlying Litigation, which are described in Plaintiff's complaint. Plaintiff argues that "Defendants' misconduct is premised upon self-righteousness but with little to no validity."  Plaintiff does not include any citations or legal support for her request for sanctions. (ECF No. 11).

Rule 11 of the Federal Rules of Civil Procedure state that "By presenting to the court a pleading, written motion, or other paper…an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…the claims, defenses, and other legal contentions are warranted by existing law…."  Fed. R. Civ. P. 11(b).  The rule also provides that "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).

1    The Court recommends denying the request for sanctions.  Plaintiff did not file a separate

2    motion for sanctions as required under Rule 11(c)(1), or provide any legal authority for her

3    request.  Although the Court is recommending denying Defendants' motion to dismiss,

4    Defendants provided a legal basis for their motion.

5    **VI.    CONCLUSION AND RECOMMENDATIONS**

6        Accordingly, the Court RECOMMENDS as follows:

7    1.    Defendants' motion to dismiss (ECF No. 9) be DENIED;

8    2.    Defendants' request for judicial notice (ECF No. 9-2) be DENIED; and

9    3.    Plaintiff's request for Rule 11 sanctions (ECF No. 11) be DENIED.

10        These findings and recommendations are submitted to the United States district judge

11   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen

12   (14) days after being served with these findings and recommendations, any party may file written

13   objections with the court. Such a document should be captioned "Objections to Magistrate Judge's

14   Findings and Recommendations." Any reply to the objections shall be served and filed within

15   fourteen (14) days after service of the objections. The parties are advised that failure to file

16   objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v.*

17   *Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394

18   (9th Cir. 1991)).

19

20   IT IS SO ORDERED.

21   Dated:    **December 6, 2021**            /s/ *Erica P. Grosjean*

22                                    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

8