**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA BROOKE, | ) Case No.: 1:20-cv-1106 JLT EPG |
| Plaintiff, | ) <br>) ORDER DECLINING TO ADOPT THE |
| v. | ) FINDINGS AND RECOMMENDATIONS AND <br>) GRANTING DEFENDANTS' MOTION TO <br>) DISMISS |
| JAVANTILAL M. PATEL, an individual dba <br>Home2 Suits by Hilton Hanford Lemoore, et al., | ) <br>) (Docs. 9, 16) |
| Defendants. | ) <br>) |

Theresa Brooke asserts the defendants violated Title III of the Americans with Disabilities Act with intimidation and threats while litigating another action before this Court, Case No. 1:20-cv-00101-NONE-SKO. (Doc. 1.)  Plaintiff contends that in the underlying action, "Hatmaker Law Group, acting outside the scope of its representation of the Defendant, threatened Plaintiff's counsel with a state bar complaint on three different occasions during a settlement discussion." (*Id.* at 4, emphasis omitted.)  In addition, Plaintiff contends that Hatmaker, threatened a counterclaim without any basis "during the course and scope of settlement discussions." (*Id.*, emphasis omitted.)

Defendants argue that Plaintiff and her attorney, Peter Strojnik Jr., initiated this action in retaliation for the defendants' "unwillingness to accept any settlement offer" made in the underlying litigation. (Doc. 9-1 at 9, emphasis omitted.)  Defendants seek dismissal of the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting the sole claim asserted by Plaintiff is barred by the *Noerr-Pennington* Doctrine. (*Id.* at 10-15.)

1

**I.      Findings and Recommendations of the Magistrate Judge**

The magistrate judge found "the settlement communications do not fit within the core of *Noerr-Pennington*." (Doc. 16 at 5.)  In so finding, the magistrate judge observed that the identified "settlement communications were not made as part of a petitioning a department of the government." (*Id.*)  The magistrate judge found the Ninth Circuit did not indicate *all* settlement discussions were subject to the *Noerr-Pennington* doctrine in *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525 (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993).  (*Id.*)  Rather, the magistrate judge observed that in *Columbia Pictures*, the Ninth Circuit found "because the movie studios' litigation conduct was subject to immunity from antitrust claims under *Noerr-Pennington*, so too were the settlement communications incidental to that lawsuit." (*Id.*)  The magistrate judge found "*Columbia Pictures* is distinguishable because the underlying claim here is not antitrust, it is ADA, and the litigation that led to the settlement conference, also an ADA claim, is not itself subject to *Noerr Pennington*." (*Id.* at 5-6.)

The magistrate judge noted Defendants cited *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005), "which upheld dismissal of an antitrust action against executives, lawyers, and law firms of state real estate sale associates involved in previous antitrust litigation based on alleged discovery misconduct." (Doc. 16 at 6.)  The magistrate judge observed, "The issue before the Court in that case was whether discovery conduct was sufficiently incidental to petitioning the government to shield the parties from antitrust liability." (*Id.*)  The magistrate judge noted again, that the Ninth Circuit "did not hold that settlement communications are privileged from all lawsuits generally." (*Id.*)

The magistrate judge indicated: "Defendants do not cite any case, nor does the Court know of any, that holds that any communications made in the context of any settlement discussions are subject to immunity under the *Noerr Pennington* doctrine." (Doc. 16 at 6.)  The magistrate judge determined "the *Noerr Pennington* doctrine does not apply here." (*Id.*)  In support of this finding, the magistrate judge observed:

> The Underlying Litigation did not involve Defendants petitioning the government.
> Rather, Defendants were themselves defending a claim. The claim at issue here is
> not antitrust or any cause of action akin to antitrust—it is ADA. Defendants'
> communications as part of settlement discussion were not incidental to them
> petitioning the government. Plaintiff's claims do not infringe on Defendants' First
> Amendment "right of the people ... to petition the Government for a redress of

grievances." *U.S. Const. amend. I.*

(Doc. 16 at 6-7.)  Therefore, the magistrate judge recommended the motion to dismiss be denied.  (*Id.* at 7.)  In addition, the magistrate judge recommended Defendants' request for judicial notice be denied, noting that the request did not contain any explanation for the request and judicial notice need not be taken.  (*Id.* at 7.)  Finally, the magistrate judge recommended that Plaintiff's request for sanctions— which was made in the opposition—be denied, because "Plaintiff did not file a separate motion for sanctions as required under Rule 11(c)(1) or provide any legal authority for her request."  (*Id.* at 7-8.)

**II.    Objections**

Defendants filed timely objections to the Findings and Recommendations, arguing the magistrate judge erred in recommending the motion to dismiss be denied.  (Doc. 17.)  Defendants argue: (1) *Noerr-Pennington* applies to defending a claim; (2) the doctrine is not limited to only antitrust actions; (3) settlement communications are within the purview of *Noerr-Pennington* immunity; (4) the magistrate judge made no "findings or recommendation on whether the Complaint sufficiently alleges an exception to the application of *Noerr-Pennington* to the alleged cause of action against Defendants;" and (5) the magistrate judge erred in recommending denial of the request for judicial notice.  (*Id.* at 6-12.)

Defendants argue the doctrine "applies equally in all contexts."  (Doc. 17 at 7-8, quoting *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) [emphasis omitted].)  In addition, Defendants observe that Ninth Circuit held "*Noerr-Pennington* immunity also applies to defensive pleadings 'because asking a court to deny one's opponent's petition is also a form of petition ....'"  (*Id.* at 7, quoting *Freeman*, 410 F.3d at 1184.)  Defendants contend, "Not only does *Noerr-Pennington* apply even where the party asserting immunity was defendant in the underlying case, as discussed in the motion papers, 'the agents of that litigation – employees and law firms and lawyers – may benefit from the immunity as well.'" (*Id.*, quoting 410 F.3d at 1186 [emphasis omitted].)  Thus, Defendants assert the "*Noerr-Pennington* immunity applies to defendant Hatmaker Law Group as well."  (*Id.*)

Defendants also contend their settlement communications were within *Noerr-Pennington* immunity.  (Doc. 17 at 9.)  Defendants note the Ninth Circuit indicated in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) that "*Noerr Pennington* immunity applies to 'settlement demands as a

class.'" (*Id.*, quoting *Sosa*, 437 F.3d at 938 [emphasis omitted].)  Furthermore, Defendants contend even conduct such as publicity and discovery may be covered by the *Noerr-Pennington Doctrine*, as they are matters related to litigation.  (*Id.* at 10, citing *Aircapital Cablevision, Inc. v. Starlink Comm's Group, Inc.*, 634 F.Supp. 316, 326 (D. Kan. 1986); *Freeman*, 410 F.3d at 1185.)  Finally, Defendants argue Plaintiff did not carry a burden to show any exception to the doctrine may be applied, because Plaintiff did not address the issue in her opposition to the motion.  (*Id.* at 11-12.) Plaintiff did not file objections to the Findings and Recommendations of the Magistrate Judge, nor respond to the objections filed by Defendants.

## III.      Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..."  28 U.S.C. § 636(b)(1).  If objections to the findings and recommendations are filed, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made."  *Id.*  A de novo review requires the court to "consider[] the matter anew, as if no decision had been rendered."  *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A.      Request for Judicial Notice

Fed. R. Evid. 201 permits a court to take judicial notice of any facts (1) "generally known within the trial court's territorial jurisdiction" or (2) that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  Defendants requested the Court take judicial notice of the following documents:

> 1. The complaint in *Brooke v. Patel*, Eastern District of California, case number 1:20-cv-00101-JLT-SKO;
>
> 2. The filing confirmation of Defendant's Motion to Dismiss in the Related Case;
>
> 3. The filing confirmation of Plaintiff's First Amended Complaint in the Related Case; and
>
> 4. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint in the Related Case.

(Doc. 9-2 at 1-2.)

As the magistrate judge observed, Defendants' request for judicial notice is devoid of any information as to why they believe judicial notice should be taken of these documents, or the relevance of the documents to the motion.  (*See* Doc. 9-2 at 1-2.)  Moreover, Defendants do not cite these documents in support of their argument in the motion to dismiss.  (*See generally* Doc. 9-1 at 9-15.)  At most, Defendants refer to the complaint and documents filed in Case No. 1:20-cv-00101-JLT-SKO as part of the litigation history between the parties.  (*See id.* at 4-8.)  Because the documents are neither relevant nor necessary to evaluate the merits of Defendants' motion, judicial notice is not required. *NovelPoster v. Javitch Canfield Grp.,* 140 F.Supp.3d 954, 960 (N.D. Cal. 2014) (denying a request for judicial notice upon finding "the documents submitted by defendants [were] not necessary to resolve this motion"); *see also Walsh v. SL One Global, Inc,* 2022 WL 3327445, at *2, n.2 (E.D. Cal. Aug. 10, 2022) (declining a request for judicial notice where consideration of the identified documents was "unnecessary to the resolution of the instant motion [to dismiss]").  Therefore, Defendants' request for judicial notice is denied.

### B.  Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Dismissal is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

1    *Iqbal*, 556 U.S. at 678 (internal citations omitted).

2         When considering a motion to dismiss, the Court must accept the factual allegations made in

3    the complaint as true. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  A court

4    must construe the pleading in the light most favorable to the plaintiffs and resolve all doubts in favor

5    of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, legal conclusions need

6    not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191,

7    1200 (9th Cir. 2003).  In addition, the Court is not required to accept as true any allegations

8    contradicted by judicially noticeable facts, and the "court may look beyond the plaintiff's complaint to

9    matters of public record" without converting the Rule 12(b)(6) motion into one for summary

10   judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995), *cert. denied*, 516 U.S. 964 (1995).

11         1.     Plaintiff's allegations

12         Plaintiff reports that "[t]he foundation for this lawsuit is the case of *Brooke v. Jav. Patel*, E.D.

13   Cal. case no. 1:20-cv-00101-NONE-SKO (the 'Underlying Litigation')."  (Doc. 1 at 4, ¶ 22.)  Plaintiff

14   contends: "In the Underlying Litigation, Defendant Hatmaker Law Group, acting outside the scope of

15   its representation of the Defendant, threatened Plaintiff's counsel with a state bar complaint on three

16   different occasions during a settlement discussion." (*Id.*, emphasis omitted.)  She also alleges that

17   "Hatmaker, acting within the scope of her representation of the Defendant, threatened a counterclaim

18   without any basis. This threat too was made during the course and scope of a settlement discussion of

19   the current claims in the Underlying Litigation." (*Id.* at 4-5, ¶ 22, emphasis omitted.)  Specifically,

20   Plaintiff alleges:

21         At times, Defendant Hatmaker Law Group has failed to understand the
           allegations, sometimes referencing Section 503 of the 2010 Standards as the
22         "Rehabilitation Act", attempting to set a deposition prior to the Rule 26(f)
           Conference, refusing to stipulate to motions later granted, misconstruing the
23         claims brought against its client, and of course making frightening threats in an
           attempt to gain an advantage in the Underlying Litigation.
24         …

25         On or around July 30, 2020, Plaintiff, through her agent, sent Defendant
           Hatmaker Law Group a settlement offer for its client. During the settlement
26         discussion via e-mail, Defendant Hatmaker Law Group, through one of its
           principals Rachelle Golden, threatened Plaintiff through her agent. First, Ms.
27         Golden threatened to file a "cross claim" (actually a counterclaim) against
           Plaintiff during settlement discussions. However, Ms. Golden would not specify
28         the basis for such a counterclaim and refused to do so upon request. There is no
           basis for any counterclaim, and the threat was, on information and belief, after

6

losing yet another motion, was an effort to cause Plaintiff to drop her ADA claim against Defendant. Ms. Golden was acting within the course and scope of her agency for Defendant when making that threat.

During the same settlement discussion, Ms. Golden threatened Plaintiff's agent on three separate occasions with a State Bar complaint because Plaintiff's agent was allegedly "insulting my intelligence." However, insults during that conversation were non-existent. The reason for the three threats of a State Bar complaint during a settlement discussion was to intimidate and cower Plaintiff into dropping her claim.

(*Id.* at 5-6, ¶¶ 23, 28-29.[1])

## 2.    Contents of emails incorporated by reference[2]

On February 4, 2020, Rachelle Golden (counsel for the defendants in the Underlying Litigation), initiated communications with Peter Strojnik (counsel for Plaintiff) "an attempt to meet and confer … to provide Ms. Brooke with an opportunity to amend the Complaint to plead sufficient facts relating to standing." (Doc. 9-3 at 11.)  Strojnik responded the same date that his client would not dismiss the case, and recommending Golden "convince [the defendant] to settle…" (*Id.*)  The following

---

[1] The Court notes that Brooke alleged: "All of Defendant's Motions have been denied in the Underlying Litigation. All of Plaintiff's Motions have been granted." (Doc. 1 at 5, ¶ 27.)  In addition, she alleges the communications in issue occurred after Defendants "los[t] yet another motion." (*Id.* at 6, ¶ 28.)  These allegations strongly imply that the Court evaluated the merits of Defendants' motions and denied them.  However, the Court had not addressed the merits of the motions filed by Defendants when this action was filed. Rather, the first motion was "denied as moot" after Brooke filed a First Amended Complaint. (Case No. 1:20-cv-0101-JLT-SKO, Doc. 11.)  Defendants' next motion, addressing the FAC, was likewise terminated as moot when Brooke filed a Second Amended Complaint. (Case No. 1:20-cv-0101-JLT-SKO, Doc. 26.)

[2] The relevant emails were attached to the declaration of Rachel Taylor Golden, counsel with Hatmaker Law Group and for defendants Patel and Anand Hospitality in the Underlying Litigation. (Doc. 9-3, Exhs. E-J.)  Defendants request the Court consider these emails as incorporated by reference into the complaint. (Doc. 9-1 at 10.)  In addressing a motion to dismiss, the Court "may consider materials incorporated into the complaint" by reference.  *Intri-Plex Technologies, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007).  Documents are properly incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement,* 593 F.3d at 1038; *see also United States v. Corinthian Colleges,* 655 F.3d 984, 999 (9th Cir. 2011). Where a complaint references communications, including emails, courts have determined the communications are incorporated by reference, and may be considered with the motion to dismiss.  *See, e.g., DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 112 (2d Cir. 2010) (finding email communications were incorporated by reference where the plaintiff "referred in her complaint to [the] e-mails"); *Nelson v. Nelson,* 2018 WL 1392885, at *3 n.5 (E.D. Cal. Mar. 9, 2018) (emails submitted by the defendant "may be considered under the incorporation by reference doctrine as the contents of the emails are alleged in the complaint and no party questions the authenticity of the emails"); *Alsup v. U.S. Bancorp,* 2015 WL 224748, at *8-9 (E.D. Cal. Jan. 15, 2015) (finding it appropriate to consider "four emails and one letter referenced in [the] complaint" in connection with a motion to dismiss, because the identified communications were incorporated into the complaint by reference). Although Plaintiff contends Defendants misrepresented the procedural history in the motion, Plaintiff did not challenge the *authenticity* of the identified emails. (*See* Doc. 11 at 2.)  Furthermore, the relevance of the emails cannot be questioned, as they make up the basis for this action. Based upon the allegations of the complaint, the Court finds the email communications—including the settlement discussions and alleged threats to report to the bar—are incorporated by reference into the complaint and may be considered in addressing the motion to dismiss.

7

day, Strojnik sent a settlement offer, at the same time indicating: "[T]here is standing as plead. Standing is an archaic defense nowadays, but you may get a judge who will agree with you. You will make your money, and your client will get hit on the back end when we appeal, if needed."  (*Id.* at 9.) Golden responded with a request that Strojnik identify a decision from the Ninth Circuit that supported his position that "the canned complaint as filed is sufficient," to which Strojnik replied: "Are you not familiar with CREEC????" (*Id.* at 8.)  Golden then again requested an "opinion that deals with one of the cases that [Strojnik] had filed, rendering it sufficient…"  (*Id.* at 7.)  Strojnik responded: "Do your own research. And in six months, explain to your client why you are asking these silly questions. File the Motion or settle. Seriously."  (*Id.* at 7.)

On June 8, 2020, Strojnik emailed Defendants' counsel, indicating he was "writing to get [a] stipulation to amend the Complaint."  (Doc. 9-3 at 22.)  Golden responded by identifying reasons why Defendants "cannot agree to stipulate to a Second Amended Complaint," including the lack of records indicating Brooke stayed at the hotel, argument that the hotel did not have a loading zone, and the sufficiency of photos provided by Strojnik.  (*Id.* at 20-21.)  In addition, Golden indicated: "[Y]ou are free to file a Motion to Amend, which will be vigorously opposed.  If Home2's Motion to Dismiss is granted and a subsequent lawsuit is filed, I will file a Motion for Vexatious Litigant…."  (*Id.* at 21.) Strojnik responded, in part, stating: "I think youre (sic) not fully understanding the claim, much like the current claim, but I will file the Motion as you request…. I wish that you would familiarize yourself with the law more than you have please. It is your client that suffers, not you, and you have a responsibility."  (*Id.*)  When Golden indicated she would review any documentation of Plaintiff's stay at the hotel if it was available, Strojnik responded: "you're not understanding. My client did not stay because she could not access the lobby from the loading zone, and she could not do that because there is no access aisle. She is deterred from staying…."  (*Id.* at 19-20.)  Strojnik also stated: "No offense, but each email and filing you make demonstrates your understanding may be wanting," and extended a settlement offer with the identified amount payable to Plaintiff in exchange for a "promise not to sue this hotel again, full release, and confidentiality."  (*Id.* at 19.)  It was in response to this email that,

Golden stated, in part: "please do not insult my intelligence regarding my knowledge on the law."[3]

(*Id.* at 18.)  Defendants did not accept the settlement offer, and the plaintiff filed the motion to amend. (*See* Doc. 9-1 at 6.)

After the Court granted the motion to amend, Plaintiff re-extended the settlement offer to Defendants, via an email from Strojnik to Golden, on July 30, 2020.  (Doc. 9-3 at 7; *see also id.* at 29.) At that time, Strojnik also stated:

> With the utmost respect to you as a person and lawyer, your handling of this case has been irresponsible, at one point asking me if Section 503 referred to the Rehabilitation Act. I suggest that you strongly recommend settlement at the above terms and cut your client's losses, as this valid claim will only become more expensive for your client.  Numerous courts have held that my client's claims are habitually valid claims, and not one has held that any of her claims are invalid. As a courtesy, my client will leave the offer open for one more calendar day till tomorrow close of business….

(*Id.* at 29.)  The following morning, Golden responded stating:

> Your comment below regarding "numerous courts have held that my client's claims are habitually valid claims, and not one has held that any of her claims are invalid," is patently false. Many courts have dismissed your canned website allegations because under the Unruh Act, that cause of action can only be brought by a person within California. Furthermore, "with the utmost respect," if you insult my intelligence one more time, I will report you to the State Bar. My client will be filing an Answer, a Cross- Complaint, and will be setting the deposition of your client.

(*Id.* at 28.)  Thus, this was the first instance in which Golden threatened to report Strojnik to the Bar, and Golden indicated the communications from Strojnik were the basis for a potential report.  (*See id.*)

The same date, Strojnik indicated he "simply believe[d]" Golden was "irresponsible in the handling of this case to the detriment of [her] client," and he would "mention that to the Bar if it continue[d] in response to [a] report."  (Doc. 9-3 at 27-28.)  Strojnik also stated:

> I want to be clear that my concerns for your handling of the case is not personal, it is professional. Professionally speaking, when an attorney refers to a counterclaim as a "cross complaint", refers to the Rehabilitation Act in an ADA case and totally and unquestionably demonstrates a failure to read the pleadings, I am concerned.

(*Id.* at 26.)  Strojnik argued his belief there was no basis for a cross-complaint, and stated: "Tread carefully, Ms. Golden."  (*Id.*)  Golden responded stating:

> Again, your opinion of me is not relevant to the case, and as I've been patient

---

[3] Plaintiff now contends "insults during that conversation were non-existent," suggesting that Golden's comment was unwarranted. (Doc. 1 at 6, ¶ 29.)  However, such an allegation is clearly undermined by Strojnik's comments that Golden asked "silly questions" and "[her] understanding may be wanting."

1    and have exercised restraint, this is my last and final request for you to stop
     making allegations against me professionally or personally. How I handle the
2    case is my prerogative and none of your business. When and how I speak to my
     client is also none of your business, as I respect and uphold the attorney-client
3    privilege vehemently. I do not take your threat lightly, and if it continues, I will
     have no choice but to report you. You are already being investigated by the State
4    Bar, and I'm sure they would not be thrilled to learn that your lack of
     professionalism, continues. Unless the substance of your email(s) concern actual
5    facts, proceedings, issues, or laws of the case, your emails will go unanswered. I
     refuse to spend any more time and energy addressing issues that have nothing to
6    do with the lawsuit.

7    (*Id.* at 25, emphasis omitted.)

8          On August 2, 2020, Strojnik emailed Golden, asserting that the purpose of doing so was "to

9    obtain more information pursuant to Rule 5-100 of the California Rules of Professional Responsibility

10   and pursuant to 28 C.F.R. 36.206, intimidation and coercion in response to an ADA claim."  (Doc. 9-3

11   at 34-35.)  At that time, Strojnik outlined the assertions that now form the basis of the complaint in the

12   instant matter, filed on August 10, 2020.  (*See id.*)

13                     3.      The *Noerr-Pennington* Doctrine

14         The *Noerr-Pennington* doctrine arises from *Eastern Railroad Presidents Conference v. Noerr*

15   *Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657

16   (1965).  Together, these cases established a doctrine that protects the First Amendment's right of the

17   people to petition the government for their grievances.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th

18   Cir. 2006).  The *Noerr-Pennington* doctrine immunizes "petitioning activity" from liability.  *Empress*

19   *LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).  The right to petition—and

20   thus the *Noerr-Pennington* doctrine—applies to petitions under the judicial branch of the government.

21   *See White v. Lee*, 227 F.3d 1214, 1231-1232 (9th Cir. 2000).  Although the doctrine originally arose in

22   the antitrust context, it now applies "equally in all contexts" for "petitioning" actions.  *Id.* at 1231; *see*

23   *also Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008)

24   (observing the *Noerr Pennington* doctrine "has been expanded beyond its original antitrust context");

25   *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527 (9th Cir. 2022) ("The immunity is no longer limited

26   to the antitrust context" [citation omitted]).

27         A defendant may challenge a claim as barred by the *Noerr-Pennington* doctrine by filing a

28   motion to dismiss under Rule 12(b)(6).  *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d

886, 894 (9th Cir. 1988) (holding "a plaintiff's complaint [must] contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply," and affirming dismissal); *see also Empress LLC v. City & Cty. of San Francisco,* 419 F.3d 1052, 1057 (9th Cir. 2005) (affirming dismissal under Rule 12(b)(6) where the *Noerr-Pennington* doctrine barred the claims). "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Ore. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) (citing *Boone*, 841 F.2d at 893).

### 4.    Applicability of the doctrine

To determine whether an activity falls within the *Noerr-Pennington* doctrine, the court must: "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney v. Foley & Lardner, LLP,* 590 F.3d 638, 644 (9th Cir. 2009) (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 530-33, 535-37 (2002)). "If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods*, 29 F.4th at 535. However, immunity under the doctrine "is not absolute, as 'neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions.'" *Id.* (quoting *Sosa*, 437 F.3d at 932). The Ninth Circuit indicated a court must "decide whether the sham exception applies within step two of the three-part analysis." *Id.*

### a.    Burden on petitioning rights

It is indisputable that Plaintiff alleges misconduct by Defendants during the course of the prior lawsuit, which was filed on January 20, 2020. (*See* Doc. 1 at 4; Doc. 9-1 at 4.) Plaintiff's success on her claims based upon the statements of Defendants—which were made both during the course of settlement discussions and "meet and confer" efforts related to the filing of motions—would restrict the ability of counsel "to zealously advocate for their clients in furtherance of their interests in the litigation." *See Reed v. East End Props., Inc.*, 2018 WL 6131211, at *12 (C.D. Cal. Mar. 15, 2018) (finding allegations of attorney "misconduct" before and during a prior lawsuit in which the defendants acted as counsel "would constitute a burden on petitioning rights"); *see also Kamal v. County of Los Angeles*, 2018 WL 4328467, at *12 (C.D. Cal. Sept. 6, 2018) (finding this factor satisfied where the plaintiff challenged the litigation activity of counsel and defendant in a prior state and federal action).

1    Thus, success in the pending matter constitutes a burden Defendants' petitioning rights and this element

2    is satisfied.  *See Reed*, 2018 WL 6131211, at *12; *Kamal*, 2018 WL 4328467, at *12.

3    <u>b.    Petitioning activity</u>

4        At step two of the inquiry, the Court's focus is "whether Defendants' conduct qualifies as a

5    '*protected* petitioning activity.'"  *B&G Foods*, 29 F.4th at 536 (emphasis in original, quoting *Sosa* 427

6    F.3d at 933).  In making this determination, the Court "must first decide whether the Petition Clause

7    extends to Defendants' conduct."  *Id.*  Next, if the conduct identified may be "protected," the Court

8    must "decide whether the sham exception to *Noerr-Pennington* applies."  *Id.*

9        *i.    Defendants' conduct*

10        The *Noerr-Pennington* doctrine extends to the "use of the channels and procedures of state and

11    federal courts to advocate causes."  *Kearney*, 590 F.3d at 644.  The Ninth Circuit indicated the

12    immunity only extends to activities that "may fairly be described as *petitions*, not to litigation conduct

13    generally."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (emphasis in

14    original).  Petitioning activity before courts include the filing of "[a] complaint, an answer, a

15    counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make

16    representations and present arguments to support their request that the court do or not do something."

17    *Id.*; *see also Rupert v. Bond*, 68 F.Supp.3d 1142, 1157 (N.D. Cal. 2014) ("protected petitioning includes

18    representing a party in a court proceeding — either in bringing suit or *defending against a suit…*")

19    [emphasis added]).

20        While "petitioning" literally refers to communications directed toward the courts, protecting

21    the First Amendment right to petition requires "breathing space" such to apply to speech made outside

22    of court but related to litigation.  *Sosa*, 437 F.3d at 932.  As a result, the Ninth Circuit indicated that

23    "[c]onduct incidental to a lawsuit … falls within the protection of the *Noerr-Pennington* doctrine."

24    *Theme Promotions*, 546 F.3d at 1007 (citing *Sosa*, 437 F.3d at 936-38).  "Conduct incidental to a

25    petition is protected by *Noerr-Pennington* if the petition itself is protected."  *Freeman*, 410 F.3d at

26    1184.  For example, engaging in "settlement talks[] is conduct incidental to a petition."  *Freeman*, 410

27    F.3d at 1185 (internal quotation marks omitted).  Similarly, communications are protected by the

28    doctrine "so long as they are sufficiently related to petitioning activity."  *Sosa*, 437 F.3d at 935; *see*

1    *also EcoDic Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F.Supp.2d 174, 1082 (C.D. Cal.

2    2010) ("all communications between private parties related to litigation—including presuit demand

3    letters and settlement offers—are entitled to immunity"); *Gifford v. Kampa*, 2021 WL 1143507, at *11

4    (E.D. Cal. Mar. 25, 2021) ("Communications related to litigation are sufficiently within the protection

5    of the Petition Clause to trigger the *Noerr-Pennington* doctrine to bar claims against a private attorney

6    as to such communications").

7           Plaintiff alleges all relevant communications occurred "during the course and scope of a

8    settlement discussion … in the Underlying Litigation."  (Doc. 1 at 4-5, ¶ 22.)  Notably, however,

9    review of the emails indicates that communications were not confined to "settlement discussions" alone

10   but involved meet-and-confer efforts related to the filing of anticipated motions and litigation tactics.

11   For example, Golden first requested that Strojnik "not insult [her] intelligence regarding [her]

12   knowledge on the law" as the parties engaged in a meet-and-confer on a stipulation to file a Second

13   Amended Complaint.  (*See* Doc. 9-3 at 18-19.)  Although a settlement offer was extended during the

14   discussion, both parties also addressed their relative positions on any stipulation or motion to amend.

15   (*See id.* at 19-22.)  When the settlement offer was extended again on July 30, 2020, the parties again

16   engaged in discussions concerning the validity of Plaintiff's claims, and Golden disclosed defendants'

17   plan to file an answer and a cross-complaint at the same time she indicated she would report Strojnik to

18   the State Bar if he "insulted [her] intelligence one more time."  (*See id.* at 28.)  These communications

19   —related to both settlement offers and motion practice— establish that counsel were engaged in, at a

20   minimum, "conduct incidental to a petition."  *See Freeman*, 410 F.3d at 1185; *Gifford*, 2021 WL

21   1143507, at *11; *Ungureanu v. A. Techert & Son,* 2012 WL 1108831, at *7 (E.D. Cal. Apr. 2, 2012)

22   (observing "[t]he doctrine … bars liability for activities undertaken in the course of representing a

23   client in litigation").  Consequently, the identified conduct qualifies as protected activities.

                                    *ii.     "Sham" exception*

25          When, as here, the identified activity is protected, the Court must next determine "whether the

26   sham exception to *Noerr-Pennington* applies."  *B&G Foods*, 29 F.4th at 536.  Immunity under the

27   *Noerr-Pennington* doctrine will not be granted if the identified petitioning activity was a "sham." *City*

28   *of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991); *see also Int'l Longshore &*

*Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017) ("Although *Noerr-Pennington* immunity extends to judicial proceedings, it does not protect persons engaging in sham litigation").

The test courts apply to evaluate application of the sham exception differs depending on the identified petitioning activity. *Evans Hotels, LLC v. Unite Here Local 30*, 433 F.Supp.3d 1130, 1148 (S.D. Cal. 2020) (citing *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998). When the petitioning activity occurs in a judicial proceeding, the Ninth Circuit indicated "the sham litigation exception might apply" in three circumstances:

> First, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Sosa*, 437 F.3d at 938 (internal citations, quotation marks omitted) (quoting *Kottle*, 146 F.3d at 1060); *see also Evans Hotels*, 433 F.Supp.3d at 1148.  For the defense of a lawsuit to be a sham under the first exception, it must be "not merely baseless," but also motivated by an improper purpose.  *See Freeman*, 410 F.3d at 1185; *Sosa*, 437 F.3d at 938.  The party challenging the protection of the *Noerr-Pennington* doctrine has the burden to show the conduct falls outside of the doctrine's protection.  *Boone*, 841 F.2d at 894.  Thus, the burden is upon Plaintiff to show one the sham exception applies.

Notably, Plaintiff did not address the sham exception in her opposition to the motion.  Rather, Plaintiff rested her opposition on the assertions that (1) Defendant was not a "petitioner" within the meaning of the doctrine and (2) "this doctrine relates only to antitrust litigation and a very small extension thereof."  (Doc. 11 at 1.)  There are no allegations in the complaint supporting a conclusion that the identified petitioning activities were "objectively baseless."  Indeed, although Plaintiff was aware of Defendants' expressed intent to file cross-claim, none was filed before the complaint was made in this action, and Plaintiff remains unaware of the basis of the intended cross-claim. Furthermore, there are no allegations that Defendants' conduct involves a "series of lawsuits," as Plaintiff identifies a single underlying action in the complaint.  Finally, Plaintiff has not alleged any facts supporting a conclusion that Defendants made "intentional misrepresentations to the court," which

14

would undermine the legitimacy of the underlying matter.  The Court declines to manufacture such arguments on behalf of Plaintiff.  *See Sosa*, 437 F.3d at 938 (declining to consider whether the sham exception applied because the plaintiff did not argue it).  Because Plaintiff fails to meet her burden to show the sham exception applies to the petitioning activities identified, the Court finds the second element for protection under the *Noerr-Pennington* doctrine is satisfied.

### c.      Statutory preclusion

Finally, the Court must determine "whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity."  *Kearney*, 590 F.3d at 644.  Put another way, the question is whether the statute under which the action is brought proscribes the identified conduct.  *See Sosa,* 437 F.3d at 939.  Plaintiff appears to challenge the propriety of Defendants' bringing a cross-claim, the potential filing of a motion to have Brooke declared a vexatious litigant, and the expressed intent to report counsel to the State Bar for his conduct communicating with opposing counsel.  (*See* Doc. 1 at 4-6.)  There is no showing that the ADA remotely proscribes such actions by counsel—or communications concerning such actions—in the course of litigation.  Thus, this element is satisfied.

### d.      Conclusion

Plaintiffs fail to show that the protected petitioning activity falls within the sham exception to the *Noerr-Pennington* doctrine.  Furthermre, the protections of the doctrine are extended to the defendant client in the Underlying Litigation, Javantilal Patel.  *See Freeman*, 410 F.3d at 1186 (noting the "*Noerr-Pennington* immunity is not limited to lawyers" and the right to petition also belonged "to the defendants in the original case").  Because immunity attaches to the claims against both Javantilal Patel (defendant in the Underlying Litigation) and Hatmaker Law Corporation (counsel in the underlying litigation), the motion to dismiss is granted as to all defendants.

### C.      Dismissal Without Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Any amendment would be futile, as defects identified above may not be cured by the pleading of additional facts.  *See, e.g., Delacruz v. Antle,* 2017 WL 3670791, at *8 (N.D. Cal. Aug 25, 2017) (declining leave to amend where there where additional facts would not overcome *Noerr-Pennington* immunity because the claims stemmed "from protected petitioning activity that does not fall within the sham exception").  Therefore, the Court finds dismissal without leave to amend is appropriate.

**IV.     Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1.     The Court declines to adopt the Findings and Recommendations (Doc. 16).

2.     Defendants' motion to dismiss (Doc. 9) is **GRANTED**.

3.     Plaintiff's Complaint is **DISMISSED** without leave to amend.

4.     The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

Dated:   **March 27, 2023**

UNITED STATES DISTRICT JUDGE

16